IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| OPEN CHEER & DANCE CHAMPIONSHIP SERIES, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | 2:23-CV-155-Z |
| VARSITY SPIRIT, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Compel Discovery Responses from Defendant International All Star Federation, Inc. ("IASF") ("Motion") (ECF No. 68), filed November 7, 2024. The Court ordered IASF to respond by November 15, 2024, considering the expedited nature of the Motion. ECF No. 73. IASF did so. ECF No. 76. Plaintiffs filed a reply on November 20, 2024. ECF No. 78. Having considered the Motion and relevant law on an expedited basis, the Court **GRANTS** the Motion **IN PART**.

**BACKGROUND**

Plaintiffs sued Defendants alleging anticompetitive activity against Plaintiffs intended to prevent Plaintiffs from "gaining a foothold in the market" because Defendants "feared it would take away their control of the market." ECF No. 1 at 6. Plaintiffs' claims centered on violations of the Sherman Antitrust Act, the Clayton Act, and the Texas Free Enterprise and Antitrust Act of 1983, among others. *Id.* at 39–44. Plaintiffs argue Defendants' "cheer cartel" colluded to enact group boycotts and other collusive activity to prevent Plaintiffs from competing against them for All Star cheer competitions. *Id.* at 6, 6–9.

The discovery process for this case has been fraught. The parties had a Rule 26(f) conference on January 3, 2024. *Id.* at 7. But they failed to fulfill their duty to "submit[] to the court *within 14 days after the conference* a written report outlining the [proposed discovery] plan." FED. R. CIV. P. 26(f)(2) (emphasis added). This failure prevented the opening of discovery. *See Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 3:14-CV-257, 2014 WL 1976867, at *3 (N.D. Tex. May 15, 2014) (explaining "the requirements that the parties hold the Rule 26(f) conference and submit the required report to the Court before any discovery requests can be served"); *see also Thompson v. Fred's Stores of Tenn., Inc.*, No. 3:15-CV-102, 2015 WL 5655948, at *2 (S.D. Miss. Sept. 24, 2015) (discovery not appropriate when "nothing ha[d] been submitted to show that the parties had conferred and developed a discovery plan"). On June 18, 2024, the Court ordered the parties to submit a proposed scheduling and discovery order. ECF No. 54. Discovery opened in July 2024 once the parties submitted a proposed joint scheduling and discovery order in response. ECF No. 59. In that proposal, parties agreed to a set of discovery deadlines that still govern the case and necessitate the expedited nature of this Order.

Plaintiffs served their first discovery requests on September 6, 2024. ECF No. 76 at 6. IASF responded seven days beyond its agreed deadline after Plaintiffs consented to an extension. ECF No. 63 at 3. IASF objected to many of Plaintiffs' requests and agreed to produce other documents on a "rolling basis." ECF No. 76 at 6. Plaintiffs correctly note that IASF should "specify the . . . end dates" of its rolling production. *See* FED. R. CIV. P. 34(b)(2)(B) advisory committee's note to 2015 amendment; *see also Torsh, Inc. v. Audio Enhancement, Inc.*, No. 22-2862, 2023 WL 7688583, at *14 (E.D. La. Nov. 15, 2023) (a party is "entitled to a date certain by which . . . rolling production will be completed as Rule 34 plainly requires the responding party to specify an end date within a reasonable period of time"). IASF failed to specify such a date. After IASF's

responses and objections, the parties communicated about the discovery responses. ECF No. 76 at 6. Plaintiffs sent a letter proposing to limit the scope of some of the discovery requests. ECF No. 76-1 at 173–75. IASF responded that it would answer the proposed limitations during the following week. *Id.* at 177. When IASF did not respond *within* one week, Plaintiffs filed this Motion to Compel.

### LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(b)(1) explains that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The scope of discovery is broad. *Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-CV-022, 2022 WL 19010334, at *2 (N.D. Tex. Aug. 25, 2022). Thus, Rule 26's only limitations are that discovery requests need to be "(1) relevant to a claim or defense in the case; and (2) proportional to the needs of the case." *Id.* The threshold for relevance at this point in a case is distinctly lower than the threshold of relevance for admissibility. *See Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted). At this stage, relevance is construed broadly enough to include any "matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (internal quotation omitted).

Thus, discovery should be allowed unless "the information sought can have no possible bearing on the claim or defense of a party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). A party may resist a discovery request by showing that it is "overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). The party resisting disclosure has the burden to "establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of

relevance . . . or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* at 470–71.

If a party fails to produce documents or answer an interrogatory under Federal Rules of Civil Procedure 33 and 34, then Rule 37(a)(3)(B) allows the other party to "move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). The party resisting the compulsion "must show specifically how each discovery request is not relevant or otherwise objectionable." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Similarly, "[s]erving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018).

But the court protects a resisting party if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Even though discovery is broad, and a resisting party bears the burden of proof to avoid court compulsion, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.")).

**ANALYSIS**

Discovery in antitrust litigation "can be expensive" because it has an "extensive scope." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 559 (2007) (citing MANUAL FOR COMPLEX

LITIGATION, FOURTH, § 30, p. 519 (2004)); *see also Am. Tel. & Tel. Co. v. Delta Comm'ns Corp.*, 408 F. Supp. 1075, 1111 (S.D. Miss. 1976) (antitrust litigation can involve a "paper mountain of discovery"). There is a reason for this. Where "allegations of conspiracy or monopolization are involved . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Cyntegra, Inc. v. IDEXX Lab'ys, Inc.*, No. CV 06-4170, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) (citation omitted). Without broad discovery, "direct evidence of an anticompetitive conspiracy is often difficult to obtain." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009).

Thus, courts tend to "liberally construe[]" the discovery rules in "antitrust cases." *F.T.C. v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977). Consequently, the "burden or cost of providing the information sought is less weighty a consideration than in other cases." *New Park Ent., LLC v. Elec. Factory Concerts, Inc.*, No. Civ.A. 98-775, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974)); *see also Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*, No. 5:09-CV-152, 2011 WL 13196168, at *2 (E.D. Tex. Apr. 29, 2011) ("Discovery in antitrust cases must also be informed by the principle that discovery inconvenience may be outweighed by the public interest in seeking the truth in every litigated case.").

**I. Requests for Production 47, 48, 49, 52, and 53**

Plaintiffs' requests 47–49, 52, and 53 all request contracts between IASF and the other Defendants. ECF No. 68-1 at 17. Request 47 requests contracts "related to cheerleading or dance" between IASF and all Defendants. *Id.* Request 48 requests contracts between Varsity and IASF about producing "all star cheerleading or dance event[s]." *Id.* Request 49 requests contracts and documents about IASF sharing revenues and expenses with all other Defendants. *Id.* Request 52

requests all contracts "related to the operation or management of" IASF and all Defendants. *Id.* Request 53 requests every other contract between IASF and all other Defendants. *Id.*

IASF objected to Requests 47–49's request for drafts and versions of the contracts, for being vague and ambiguous, for being irrelevant, and for being unduly burdensome and not proportional. ECF No. 68-2 at 34–36. Plaintiffs proposed limits to the requests. ECF No. 68 at 15. IASF objected to Requests 52 and 53 for similar reasons and refused to produce any responsive documents for those requests. ECF No. 68-2 at 37–38. Plaintiff also proposed limits to those requests. ECF No. 68 at 15.

As curtailed by Plaintiffs' proposed limitations, Plaintiff's Motion is **GRANTED** as to Requests 47, 48, and 49. Plaintiffs' Motion is **DENIED** as to Requests 52 and 53. Requests 47–49, as limited by Plaintiffs' proposed limitations, are relevant to claims at issue. Executed contracts with amendments between IASF and other Defendants related to shared revenues or expenses, cheerleading and dance, and all-star cheerleading and dance are all relevant to allegations of anticompetitive activity between Defendants related to cheerleading and dance events. These contracts will help evidence if Defendants coordinate anticompetitive activity between themselves.

As limited, the production of executed contracts is not unduly burdensome nor out of proportion to expansive antitrust discovery. IASF fails to explain how these requests would be unduly burdensome and thus its objections on those grounds amount to boilerplate. *See Lopez*, 327 F.R.D. at 582; *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A mere statement by a party that a request is overly broad and unduly burdensome is not adequate to voice a successful objection." (internal quotes omitted)). Further, the term "executed contract" is not vague or ambiguous. Requests 52 and 53 are denied because they would surely encompass documents beyond the scope of the antitrust claims — particularly Request 53. By keeping production of

6

contracts between Defendants limited to those relating to events at the center of these claims, Defendants' concerns can be resolved, and the Requests' duplicative nature reduced.

IASF for some reason objects to Requests but simultaneously claims "it is not aware of any written contracts between IASF and any of the other Defendants, much less any in its possession, custody, or control." ECF No. 76 at 10. International All Star Foundation ("Foundation") claims it is the "effective successor to the dissolved International All Star Federation, Inc." ECF No. 76 at 13. International All Star Federation ("Federation"), though apparently dissolved in 2022, has been litigating up until the Response to this Motion. *See, e.g.*, ECF No. 64 at 4. Because International All Star Foundation is the successor to International All Star Federation, the Court **ORDERS** certification that both International All Star Foundation and International All Star Federation have no written contracts between them and all other Defendants or, alternatively, production of those documents consistent with this Order. If IASF certifies its representation is accurate and no written contracts between either the Federation or the Foundation and the other Defendants exist, then IASF should take care to understand and comply with Federal Rule of Civil Procedure 34(b)(2)(C) and explain in future discovery if documents are being withheld because of an objection. IASF did not comply with this Rule in its objections to Plaintiffs' requests. IASF is **ORDERED** to produce documents responsive to Requests 47–49 in the possession, custody, or control of either the Federation or the Foundation as curtailed by Plaintiffs' proposed limitations. ECF Nos. 68 at 15, 76 at 9.

### II. Request for Production 60

Plaintiffs' Request for Production 60 asks IASF to produce "all documents or information provided" by IASF to other Defendants "reflecting financial information, sales data, and any other

7

competitively sensitive business information related to another event producers' cheerleading and dance event operations or business." ECF No. 68-1 at 19.

IASF responded with boilerplate objections claiming the Request was overly broad, unduly burdensome, and not proportional to the case's needs. ECF No. 68-2 at 44. IASF also objected and claimed the terms "competitively sensitive business information" and "cheerleading and dance event operations or business" were vague, ambiguous, and overly broad. In response, Plaintiffs limited and defined these terms. ECF No. 68 at 16.

Whether IASF shared other event producers' financial information to other Defendants is relevant to whether anticompetitive activity occurred. If the other Defendants and IASF had access to other event producers' sensitive financial information, then Defendants could engage in activity that would aid in potential anticompetitive activity and potentially bar other event producers from successfully entering the market. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 798 (N.D. Ill. 2017). IASF's protestations that Plaintiffs did not articulate a basis for suspicion does not amount to a denial that such documents exist. The Request is also proportional to the needs of the case as limited by Plaintiffs' proposals. Plaintiffs' Motion is **GRANTED** as to Request 60 as limited by both parties. IASF is **ORDERED** to produce documents responsive to Request 60, as limited by Plaintiff, in the possession, custody, or control of either the Federation or the Foundation. ECF No. 68 at 16 (Plaintiffs' proposed limitations).

### III. Request for Production 65

Plaintiff requests financial statements related to All Star cheer and dance competitions. ECF No. 68-1 at 19. IASF objected because it would require producing virtually all its financial statements and that the terminology was vague and ambiguous. ECF 68-2 at 46. Plaintiffs again limited the scope of the request. ECF No. 68 at 17–18. IASF agreed to produce income statements

8

for calendar years 2020–2023. ECF No. 76 at 12. IASF contends that this will show all annual revenue for IASF including all derived from All Star cheer and dance competitions. As limited by Plaintiffs and IASF, the request is relevant and proportional. Plaintiffs' Motion is **GRANTED** for Request 65 as limited by both parties. IASF is **ORDERED** to produce documents response to Request 65, as limited by Plaintiffs and IASF, in the possession, custody, or control of either the Federation or the Foundation.

### IV. Request for Production 81

Plaintiffs' Request 81 asks IASF to produce any judgment-sharing agreements that may exist between IASF and Defendants. IASF argues any judgment-sharing agreement is not relevant because this is not the sort of case where a jury would expect Defendants to blame each other for the alleged anticompetitive activity. IASF's argument is unavailing. IASF's primary authority against production of a judgment-sharing agreement denies it on timeliness grounds and admissibility to trial grounds. *See In re HIV Antitrust Litig.*, No. 19-CV-02573, 2023 WL 3668960, at *1–2 (N.D. Cal. May 24, 2023) ("As an initial matter, the motion is untimely . . . Plaintiffs' motion . . . clearly is directed to admissibility as well."). But the Court need not make any decision as to admissibility at this juncture. And the potential existence of a judgment-sharing agreement is relevant. A judgment-sharing agreement is relevant to witness credibility and bias. *See Geneva Pharm. Tech. Corp. v. Barr Lab'ys, Inc.*, No. 98 CIV.861, 2003 WL 1345136, at *5 (S.D.N.Y. Mar. 9, 2003). Plaintiffs argue extensively from (but to their shame fail to cite) a journal article noting the relevance of judgment-sharing agreements in antitrust litigation. *See* Christopher R. Leslie, *Judgment-Sharing Agreements*, 58 DUKE L.J. 747, 809–10 (2009) (noting judgment-sharing agreements are sometimes discoverable and are relevant for witness bias, the alteration of incentives among defendants, and to provide evidence about participants with information about

9

the alleged conspiracy). The Court **GRANTS** Plaintiffs' Motion as to Request 81 to the extent any judgment-sharing agreements are not covered under attorney-client privilege or the work-product doctrine. IASF is **ORDERED** to produce responsive documents in the possession, custody, or control of either the Federation or the Foundation. If such documents are privileged, IASF must state with specificity the nature and applicability of the privilege. In respect to documents that pertain to the Federation, the attorney-client privilege may not apply because the Federation is dissolved. *See United States v. Walters*, No. 2:19-CR-51, 2020 WL 1934803, at *2 (S.D. Miss. Apr. 21, 2020) ("The weight of federal authority supports a holding that there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function." (citing cases)).

## V. Requests for Production 88, 89, and 90

Plaintiffs' Requests 88–90 request documents and communications related to the dissolution of the Federation with the other Defendants. ECF No. 68-2 at 55–56. IASF objected that these Requests are wholly irrelevant to Plaintiffs' claims but agreed to produce documents establishing that the Federation had been dissolved. *Id.* IASF does not explain in its objections how the sought information is irrelevant. Nor does IASF argue in its Response exactly how the Requests are irrelevant. In contrast, Plaintiffs note that IASF has another Defendant's Chief Legal Officer as its registered agent, suggesting some level of internal intertwining between the entities. IASF does not address this. Instead, IASF argues Plaintiffs are fishing without answering how, if other Defendants were involved with the Federation's dissolution, it would not provide some circumstantial evidence of potential collusion — especially if assets or liabilities were transferred. Antitrust litigation discovery can be expansive. But Plaintiffs' requests, while likely relevant, may sweep too broadly and begin to be unduly burdensome. Accordingly, the Court **DENIES** Request

88 because IASF has already produced this information. ECF No. 76 at 13. The Court **GRANTS** Plaintiffs' Motion as to Requests 89 and 90 but limits them as follows:

Request 89: The Court **ORDERS** IASF to produce all documents and communications between all Defendants that are in the possession, custody, or control of either the Federation or the Foundation which are related to the dissolution of the IASF.

Request 90: The Court **ORDERS** IASF to produce all documents and communications between all Defendants that are in the possession, custody, or control of either the Federation or the Foundation which are related to the transfer or assignment of any of IASF's assets or liabilities to another Defendant as part of the dissolution of the IASF.

### VI. Request for Production 5, 14, 15, 40, and 42

Plaintiffs' Request 5 asks for production of communications between IASF and any other person that refer or relate to "Plaintiffs, the Allstar World Championship, or restrictions on event producers." ECF Nos. 68 at 21, 68-2 at 9–10. IASF agrees to "produce communications in its possession that refer to Plaintiffs or the All Star World Championship" and claims it already has. ECF No. 76 at 14. But IASF does not claim to have agreed to produce communications on restrictions on event producers. When the heart of the Complaint alleges anticompetitive, collusive activity among Defendants by placing restrictions on event producers, such communications are relevant. IASF levels no more than boilerplate objections on burdensomeness and proportionality.

Accordingly, Plaintiffs' Motion is **GRANTED** as to Request 5. To the extent IASF has not already done so, the Court **ORDERS** IASF to produce all communications that are in the possession, custody, or control of either the Federation or the Foundation that relate to restrictions on event producers as set forth in Request 5, subparts (a)–(e).

Plaintiffs' Motion as to Requests 14 and 15 is **DENIED**. IASF was not a party to the previous trademark litigation at issue and the trademark assignment was between other Defendants in this suit. Plaintiffs may be able to acquire such information to the extent it demonstrates collusive activity from other Defendants in this case that are related to the underlying transaction and litigation. *See* FED. R. CIV. P. 26(b)(2)(C)(i).

Plaintiffs' Motion is **GRANTED** as to Request 40 because it is plainly relevant to the alleged underlying anticompetitive, collusive activity. The Court **ORDERS** IASF to produce documents or communications that are in the possession, custody, or control of either the Federation or the Foundation related to any efforts to require event producers to impose restrictions on which cheerleading or dance events their own customers may attend.

Plaintiffs' Motion is **DENIED** as to Request 42. Request 42 is overly broad because it requests all documents and communications related to "*any* complaints or concerns . . . about IASF's, USASF's, or Varsity's policies, rules, or practices." ECF No. 68-2 at 31. Of course, event producers, athletes, gyms, and coaches will lodge bevies of complaints or concerns about IASF policies, and most will likely not relate to alleged collusive, anticompetitive activity on the part of IASF or Defendants.

### VII. Attorney's Fees

Federal Rule of Civil Procedure 37(a)(5)(A), (C) requires a court to require the party whose conduct necessitated the motion to compel the payment of the movant's reasonable expenses incurred in making the motion. However, the court may not order such payment is the movant did not engage in good faith to obtain the discovery prior to filling the motion to compel, the resisting party's nondisclosure or objections were substantially justified, or other circumstances make the

award unjust. FED. R. CIV. P. 37(a)(5)(A)(i)–(iii). If the motion to compel is granted in part and denied in part, then the court may apportion the reasonable expenses. FED. R. CIV. P. 37(a)(5)(C).

Accordingly, because the Court granted the Motion in part and denied in part, the Court grants IASF an "opportunity to be heard" and **ORDERS** IASF to brief why the court should not "apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

CONCLUSION

The Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**. IASF is **ORDERED** to complete its rolling production within seven days of the issuance of this Order.

SO ORDERED.

November 25, 2024

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE