IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| OPEN CHEER & DANCE CHAMPIONSHIP SERIES, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | 2:23-CV-155-Z |
| VARSITY SPIRIT, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Compel Discovery Responses from Defendant International Cheer Union ("ICU") ("Motion") (ECF No. 69), filed November 7, 2024. The Court ordered ICU to respond by November 15, 2024, considering the expedited nature of the Motion. ECF No. 72. ICU did so. ECF No. 77. Plaintiffs filed a reply on November 20, 2024. ECF No. 79. Having considered the Motion and relevant law on an expedited basis, the Court **GRANTS** the Motion **IN PART**.

**BACKGROUND**

Plaintiffs sued Defendants alleging anticompetitive activity against Plaintiffs intended to prevent Plaintiffs from "gaining a foothold in the market" because Defendants "feared it would take away their control of the market." ECF No. 1 at 6. Plaintiffs' claims centered on violations of the Sherman Antitrust Act, the Clayton Act, and the Texas Free Enterprise and Antitrust Act of 1983, among others. *Id.* at 39–44. Plaintiffs argue Defendants' "cheer cartel" colluded to enact group boycotts and other collusive activity to prevent Plaintiffs from competing against them for All Star cheer competitions. *Id.* at 6, 6–9.

1

The discovery process for this case has been fraught. The parties had a Rule 26(f) conference on January 3, 2024. ECF No. 69 at 7. But they failed to fulfill their duty to "submit[] to the court *within 14 days after the conference* a written report outlining the [proposed discovery] plan." FED. R. CIV. P. 26(f)(2) (emphasis added). This failure prevented the opening of discovery. *See Escareno ex rel. A.E. v. Lundbeck, LLC*, No. 3:14-CV-257, 2014 WL 1976867, at *3 (N.D. Tex. May 15, 2014) (explaining "the requirements that the parties hold the Rule 26(f) conference and submit the required report to the Court before any discovery requests can be served"); *see also Thompson v. Fred's Stores of Tenn., Inc.*, No. 3:15-CV-102, 2015 WL 5655948, at *2 (S.D. Miss. Sept. 24, 2015) (discovery not appropriate when "nothing ha[d] been submitted to show that the parties had conferred and developed a discovery plan"). On June 18, 2024, the Court ordered the parties to submit a proposed scheduling and discovery order. ECF No. 54. Discovery opened in July 2024 once the parties submitted a proposed joint scheduling and discovery order in response. ECF No. 59. In that proposal, the parties agreed to a set of discovery deadlines that still govern the case and necessitate the expedited nature of this Order.

Plaintiffs served their first discovery requests on September 6, 2024. ECF No. 76 at 6. ICU responded seven days beyond its agreed deadline after Plaintiffs consented to an extension. ECF No. 63 at 3. ICU objected to many of Plaintiffs' requests and agreed to produce other documents on a "rolling basis." ECF No. 77 at 6. Plaintiffs correctly note that ICU should "specify the . . . end dates" of its rolling production. *See* FED. R. CIV. P. 34(b)(2)(B) advisory committee's note to 2015 amendment; *see also Torsh, Inc. v. Audio Enhancement, Inc.*, No. 22-2862, 2023 WL 7688583, at *14 (E.D. La. Nov. 15, 2023) (a party is "entitled to a date certain by which . . . rolling production will be completed as Rule 34 plainly requires the responding party to specify an end date within a reasonable period of time"). ICU failed to specify such a date. After ICU's responses

and objections, the parties communicated about the discovery responses. ECF No. 77 at 6. Plaintiffs sent a letter proposing to limit the scope of some of the discovery requests. ECF No. 77-1 at 175–76. ICU responded that it would answer the proposed limitations during the following week. *Id.* at 172. When ICU did not respond *within* one week, Plaintiffs filed this Motion to Compel.

### LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(b)(1) explains that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The scope of discovery is broad. *Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-CV-022, 2022 WL 19010334, at *2 (N.D. Tex. Aug. 25, 2022). Thus, Rule 26's only limitations are that discovery requests need to be "(1) relevant to a claim or defense in the case; and (2) proportional to the needs of the case." *Id.* The threshold for relevance at this point in a case is distinctly lower than the threshold of relevance for admissibility. *See Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted). At this stage, relevance is construed broadly enough to include any "matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (internal quotation omitted).

Thus, discovery should be allowed unless "the information sought can have no possible bearing on the claim or defense of a party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). A party may resist a discovery request by showing that it is "overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). The party resisting disclosure has the burden to "establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of

3

relevance . . . or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* at 470–71.

If a party fails to produce documents or answer an interrogatory under Federal Rules of Civil Procedure 33 and 34, then Rule 37(a)(3)(B) allows the other party to "move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). The party resisting the compulsion "must show specifically how each discovery request is not relevant or otherwise objectionable." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Similarly, "[s]erving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018).

But the court protects a resisting party if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Even though discovery is broad, and a resisting party bears the burden of proof to avoid court compulsion, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.")).

**ANALYSIS**

Discovery in antitrust litigation "can be expensive" because it has an "extensive scope." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 559 (2007) (citing MANUAL FOR COMPLEX

4

LITIGATION, FOURTH, § 30, p. 519 (2004)); *see also Am. Tel. & Tel. Co. v. Delta Comm'ns Corp.*, 408 F. Supp. 1075, 1111 (S.D. Miss. 1976) (antitrust litigation can involve a "paper mountain of discovery"). There is a reason for this. Where "allegations of conspiracy or monopolization are involved . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Cyntegra, Inc. v. IDEXX Lab'ys, Inc.*, No. CV 06-4170, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) (internal quotation omitted). Without broad discovery, "direct evidence of an anticompetitive conspiracy is often difficult to obtain." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009).

Thus, courts tend to "liberally construe[]" the discovery rules in "antitrust cases." *F.T.C. v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977). Consequently, the "burden or cost of providing the information sought is less weighty a consideration than in other cases." *New Park Ent., LLC v. Elec. Factory Concerts, Inc.*, No. Civ.A. 98-775, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974)); *see also Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*, No. 5:09-CV-152, 2011 WL 13196168, at *2 (E.D. Tex. Apr. 29, 2011) ("Discovery in antitrust cases must also be informed by the principle that discovery inconvenience may be outweighed by the public interest in seeking the truth in every litigated case.").

**I. Requests for Production 47, 48, 49, 50, and 52**

Plaintiffs' requests 47–49, 50, and 52 all request contracts or documents between ICU and the other Defendants. ECF No. 69-1 at 16. Request 47 requests contracts "related to cheerleading or dance" between ICU and other Defendants. *Id.* Request 48 requests contracts between Varsity and ICU about producing "all star cheerleading or dance event[s]." *Id.* Request 49 requests contracts and documents about ICU sharing revenues and expenses with other Defendants. *Id.*

Request 50 requests all documents "showing any financial benefit, funds, or compensation going to ICU based on its involvement with any event" held by other Defendants. *Id.* Request 52 requests all contracts "related to the operation or management of" ICU and other Defendants. *Id.*

ICU objected to Requests 47–49's demands for drafts and versions of the contracts, for being vague and ambiguous, for being irrelevant, and for being unduly burdensome and not proportional. ECF No. 69-2 at 34–35. Plaintiffs proposed limits to the requests. ECF No. 69 at 15. ICU objected to Request 50 because the terms "financial benefit" and "involvement" were vague and ambiguous, the sought information was irrelevant to the claims, and because the Request was overly broad, unduly burdensome, and unproportional. ECF No. 69-2 at 36. And ICU objected to Request 52 for similar reasons. *Id.* at 37. Plaintiff also proposed limits to those requests. ECF No. 68 at 15.

As curtailed by Plaintiffs' proposed limitations, Plaintiff's Motion is **GRANTED** as to Requests 47, 48, 49, and 50. Plaintiffs' Motion is **DENIED** as to Request 52. Requests 47–49, and 50, as limited by Plaintiffs' proposed limitations, are relevant to claims at issue. Executed contracts with amendments and other documents between ICU and other Defendants related to shared revenues or expenses, cheerleading and dance, all-star cheerleading and dance, and the funds and compensation related to Defendants' cheerleading events are all relevant to allegations of anticompetitive activity between Defendants related to cheerleading and dance events. These contracts and documents will help evidence if Defendants coordinate anticompetitive activity between themselves.

As limited, the production of executed contracts and documents showing compensation going to ICU is not unduly burdensome nor out of proportion to expansive antitrust discovery. ICU fails to explain how these requests would be unduly burdensome and thus its objections on

those grounds amount to boilerplate. *See Lopez*, 327 F.R.D. at 582; *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A mere statement by a party that a request is overly broad and unduly burdensome is not adequate to voice a successful objection." (internal quotes omitted)). Further, the term "executed contract" is not vague or ambiguous. Nor is the term "involvement" as defined by Plaintiffs. ECF No. 69 at 15. Request 52 is denied because it would likely encompass documents beyond the scope of the antitrust claims. By keeping production between Defendants limited to those relating to events at the center of these claims, ICU's concerns can be resolved, and the Requests' duplicative nature reduced.

ICU claims it "is not aware of other written contracts between ICU and any of the other Defendants relating to any other topic" aside from one contract it has already produced. ECF No. 77 at 10. Yet ICU objected to the Requests anyway. And ICU claims it should not have to search for any other contracts that may exist. *Id.* Considering ICU's objections but seemingly contradictory representations in its briefing, the Court **ORDERS** certification that ICU has no other executed written contracts between it and any other Defendants that would be responsive to these requests or, alternatively, production of those documents consistent with this Order. If ICU certifies its representation is accurate and no responsive written contracts between it and the other Defendants exist, then ICU should take care to understand and comply with Federal Rule of Civil Procedure 34(b)(2)(C) and explain in future discovery if documents are being withheld because of an objection. ICU did not comply with this Rule in its objections to Plaintiffs' requests. ICU is **ORDERED** to produce documents responsive to Requests 47–49, and 50, in its possession, custody, or control as curtailed by Plaintiffs' proposed limitations. ECF Nos. 69 at 15, 77 at 8–9.

**II. Request for Production 57**

Plaintiffs' Request for Production 57 asks ICU to produce "all documents or information provided" by ICU to other Defendants "reflecting financial information, sales data, and any other competitively sensitive business information related to another event producers' cheerleading and dance event operations or business." ECF No. 69-1 at 18.

ICU responded with boilerplate objections claiming the Request was overly broad, unduly burdensome, and not proportional to the case's needs. ECF No. 69-2 at 41. ICU also objected and claimed the terms "competitively sensitive business information" and "cheerleading and dance event operations or business" were vague, ambiguous, and overly broad. In response, Plaintiffs limited and clarified these terms. ECF No. 69 at 16–17.

Whether ICU shared other event producers' financial information to other Defendants is relevant to whether anticompetitive activity occurred. If the other Defendants and ICU had access to other event producers' sensitive financial information, then Defendants could engage in activity that would aid in potential anticompetitive activity and potentially bar other event producers from successfully entering the market. *See, e.g., In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 798 (N.D. Ill. 2017). ICU's protestations that Plaintiffs did not articulate a basis for suspicion does not amount to a denial that such documents exist. ICU also protests that it does not have any "event producers" as members. ECF No. 77 at 11. But, of course, the Request does not turn on that. It asks for any evidence that ICU produced sensitive financial information related to *another* event producers' events. ECF No. 69-2 at 40–41. The Request is also proportional to the needs of the case as limited by Plaintiffs' proposals.

ICU represents that it does not have any responsive information to this Request. ECF No. 77 at 11. If so, why ICU did not say it withheld no documents based on its objection remains in question. ICU is **ORDERED** to certify its representation that it has no responsive documents or

information remains accurate. Otherwise, Plaintiffs' Motion is **GRANTED** as to Request 57 as limited by both parties. ICU is **ORDERED** to produce documents responsive to Request 57, as limited by Plaintiff, in its possession, custody, or control. ECF No. 69 at 16–17 (Plaintiffs' proposed limitations).

### III. Request for Production 62

Plaintiff requests financial statements related to all star cheer and dance competitions. ECF No. 69-1 at 19. ICU objected because it claimed the phrases "financial statements, summaries, forecasts, business plans, budgets, and analyses related to all star cheer and dance competitions" and "comparisons to budget" were somehow vague and ambiguous. ECF 69-2 at 43. ICU further argues that such a broad request would require producing "essentially every piece of financial data that ICU could conceivably possess." ECF No. 77 at 12. Plaintiffs again limited the scope of the request. ECF No. 69 at 18. ICU agreed to produce income statements for calendar years 2020–2023. ECF No. 77 at 12. ICU contends that this will show all annual revenue for ICU including all derived from all star cheer and dance competitions. As limited by Plaintiffs and ICU, the request is relevant and proportional. Plaintiffs' Motion is **GRANTED** for Request 62 as limited by both parties. ICU is **ORDERED** to produce documents responsive to Request 62, as limited by Plaintiffs and ICU, in ICU's possession, custody, or control.

### IV. Request for Production 76

Plaintiffs' Request 76 asks ICU to produce any judgment-sharing agreements that may exist between ICU and other Defendants. ICU argues any judgment-sharing agreement is not relevant because this is not the sort of case where a jury would expect Defendants to blame each other for the alleged anticompetitive activity. ICU's argument is unavailing. ICU's primary authority against production of a judgment-sharing agreement denies it on timeliness grounds and

9

admissibility to trial grounds. *See In re HIV Antitrust Litig.*, No. 19-CV-02573, 2023 WL 3668960, at *1–2 (N.D. Cal. May 24, 2023) ("As an initial matter, the motion is untimely . . . Plaintiffs' motion . . . clearly is directed to admissibility as well."). But the Court need not make any decision as to admissibility at this juncture. And the potential existence of a judgment-sharing agreement is relevant. A judgment-sharing agreement is relevant to witness credibility and bias. *See Geneva Pharm. Tech. Corp. v. Barr Lab'ys, Inc.*, No. 98 CIV.861, 2003 WL 1345136, at *5 (S.D.N.Y. Mar. 9, 2003). Plaintiffs argue extensively from (but again failed to cite) a journal article noting the relevance of judgment-sharing agreements in antitrust litigation. *See* Christopher R. Leslie, *Judgment-Sharing Agreements*, 58 DUKE L.J. 747, 809–10 (2009) (noting judgment-sharing agreements are sometimes discoverable and are relevant for witness bias, the alteration of incentives among defendants, and to provide evidence about participants with information about the alleged conspiracy); ECF No. 85 at 9. The Court **GRANTS** Plaintiffs' Motion as to Request 76 to the extent any judgment-sharing agreements are not covered under attorney-client privilege or the work-product doctrine. ICU is **ORDERED** to produce responsive documents in its possession, custody, or control. If such documents are privileged, ICU must state with specificity the nature and applicability of the privilege. If ICU has no such agreement, it should certify that its representation in its brief remains true. ECF No. 77 at 13.

### V. Attorney's Fees

Federal Rule of Civil Procedure 37(a)(5)(A), (C) requires a court to require the party whose conduct necessitated the motion to compel the payment of the movant's reasonable expenses incurred in making the motion. However, the court may not order such payment if the movant did not engage in good faith to obtain the discovery prior to filling the motion to compel, the resisting party's nondisclosure or objections were substantially justified, or other circumstances make the

10

award unjust. FED. R. CIV. P. 37(a)(5)(A)(i)–(iii). If the motion to compel is granted in part and denied in part, then the court may apportion the reasonable expenses. FED. R. CIV. P. 37(a)(5)(C).

Accordingly, because the Court granted the Motion in part and denied in part, the Court grants ICU an "opportunity to be heard" and **ORDERS** ICU to brief why the court should not "apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(C).

CONCLUSION

The Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART**. ICU is **ORDERED** to complete its rolling production within seven days of the issuance of this Order.

**SO ORDERED.**

November 26, 2024

*/s/ Matthew J. Kacsmaryk*
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE