IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| OPEN CHEER & DANCE CHAMPIONSHIP SERIES, LLC, *et al.*, | |
| Plaintiffs, | |
| v. | 2:23-CV-155-Z |
| VARSITY SPIRIT, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs' Motion to Compel Complete Responses to Plaintiffs' First Set of Interrogatories to Defendant Varsity Spirit, LLC ("Motion"), filed on July 18, 2025. ECF No. 158. Defendant Varsity Spirit filed a Response on August 8, 2025. ECF No. 168. Plaintiffs filed their Reply on August 14, 2025. ECF No. 172 The Motion is now ripe. Having considered the Motion, briefing, and relevant law, the Motion is **GRANTED in part** and **DENIED in part**.

LEGAL STANDARD

Federal Rule of Civil Procedure Rule 26(b)(1) explains that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The scope of discovery is broad. *See Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-CV-022, 2022 WL 19010334, at *2 (N.D. Tex. Aug. 25, 2022). Thus, Rule 26's only limitations are that discovery requests need to be "(1) relevant to a claim or defense in the case; and (2) proportional to the needs of the case." *Id.* The threshold for relevance at the discovery stage is distinctly lower than the threshold for admissibility at trial. *See Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted). At this stage, relevance is construed broadly enough to include any

"matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* (internal quotation and citation omitted).

Thus, discovery should be allowed unless "the information sought can have no possible bearing on the claim or defense of a party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). A party may resist a discovery request by showing that it is "overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). The party resisting disclosure must "establish the lack of relevance by demonstrating that the requested discovery either does not come within the broad scope of relevance . . . or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* at 470–71.

If a party fails to produce documents or answer an interrogatory under Federal Rules of Civil Procedure 33 and 34, then Rule 37(a)(3)(B) allows the other party to "move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). The party resisting the compulsion "must show specifically how each discovery request is not relevant or otherwise objectionable." *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 434 (N.D. Tex. 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)). An "evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). Similarly, "[s]erving unsupported and boilerplate or stock objections does not preserve or accomplish anything other than waiver and subjecting the responding party to sanctions." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 582 (N.D. Tex. 2018).

However, courts should protect a resisting party if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED. R. CIV. P. 26(b)(2)(C)(i). Even

though discovery is broad, and a resisting party bears the burden of proof to avoid court compulsion, Rule 26 "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) (citing *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly.")).

ANALYSIS

Discovery in antitrust litigation "can be expensive" because it has an "extensive scope." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 559 (2007) (citing MANUAL FOR COMPLEX LITIGATION, FOURTH, § 30, p. 519 (2004)); *see also Am. Tel. & Tel. Co. v. Delta Comm'ns Corp.*, 408 F. Supp. 1075, 1111 (S.D. Miss. 1976) (antitrust litigation can involve a "paper mountain of discovery"). This makes sense. Where "allegations of conspiracy or monopolization are involved . . . broad discovery may be needed to uncover evidence of invidious design, pattern or intent." *Cyntegra, Inc. v. IDEXX Lab'ys, Inc.*, No. CV 06-4170, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) (internal quotation omitted). Without broad discovery, "direct evidence of an anticompetitive conspiracy is often difficult to obtain." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009). In the same way, broad discovery for a defendant is necessary to defend against conspiracy or monopolization allegations and damages.

Thus, courts tend to "liberally construe[]" the discovery rules in antitrust cases. *F.T.C. v. Lukens Steel Co.*, 444 F. Supp. 803, 805 (D.D.C. 1977). This means the "burden or cost of providing the information sought is less weighty a consideration than in other cases." *New Park Ent., LLC v. Elec. Factory Concerts, Inc.*, No. Civ.A. 98-775, 2000 WL 62315, at *3 (E.D. Pa. Jan. 13, 2000) (quoting *United States v. Int'l Bus. Mach. Corp.*, 66 F.R.D. 186, 189 (S.D.N.Y. 1974)); *see also Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*, No. 5:09-

CV-152, 2011 WL 13196168, at *2 (E.D. Tex. Apr. 29, 2011) ("Discovery in antitrust cases must also be informed by the principle that discovery inconvenience may be outweighed by the public interest in seeking the truth in every litigated case.").

Here, the parties have asked the Court to resolve yet another discovery dispute. This time, the parties have been unable to agree about the adequacy of Defendant Varsity Spirit's responses to eleven of Plaintiffs' fifteen interrogatories. The Court will address each interrogatory in turn.

### I. Interrogatory 1

Plaintiffs seek to compel Defendant Varsity Spirit to respond more fully to Interrogatory 1. Interrogatory 1 seeks the following information:

> Identify all persons who have, claim to have, or who you believe may have knowledge, documents, or information relating to any fact alleged in the pleadings (as defined in Federal Rule of Civil Procedure 7(a)) filed in this action, or any fact underlying the subject matter of this action. For each person identified, describe in detail the nature and substance of the knowledge, documents, or information that you believe the person(s) identified may have.

ECF No. 158-1 at 4. Plaintiffs contend that this is a "standard interrogatory asking for the identification of persons with knowledge of facts alleged in the pleadings and a description of what they know." ECF No. 158 at 2. Defendant responds that Interrogatory 1 is "plainly absurd on its face" because, as written, it would require Defendant to "identify essentially every person it has ever encountered in the cheerleading industry, including every cheerleader, every parent, every coach, every gym owner, [and] every judge," among many other individuals.

The Court agrees with Defendant. Interrogatory 1 is sloppily drafted and, as written, asks Defendant to identify potentially hundreds of thousands of individuals, the vast majority of whom are unlikely to have knowledge relevant to Plaintiffs' claims. Courts routinely reject such broadly worded interrogatories. *See generally, e.g., Alt Platform, Inc. v.*

*Beckett Collectibles, LLC*, No. 3:22-CV-2867, 2025 WL 836049, at *9 (N.D. Tex. Mar. 17, 2025) (sustaining objection to interrogatory seeking the identity of "all persons with knowledge concerning the claims and defenses of the parties or [plaintiff's] allegations"). Even Plaintiffs themselves seem to recognize that Interrogatory 1 was not reasonable. In their Motion to Compel, Plaintiffs concede that they "would not have ever sent this interrogatory but for Varsity withdrawing its responses to initial disclosures." ECF No. 158 at 2. In any event, Varsity did disclose the identities of twenty individuals who "may have some information relating to some of the allegations in the complaint." ECF No. 168 (citing Kaiser Decl. ¶ 7). And what's more, Plaintiffs note in their Reply that they are no longer seeking "further relief as to the identification of individuals with knowledge." ECF No. 172 at 3.

Defendant has met its burden of showing that Interrogatory 1 is "overly broad, unduly burdensome, or oppressive." *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014). The Court also finds that Defendant's response to Interrogatory 1 was sufficient. The Court accordingly **DENIES** Plaintiffs' Motion to Compel as to Interrogatory 1.

### II. Interrogatory 3

Interrogatory 3 reads:

> For the period from January 1, 2018, to the present, identify each All Star competition event hosted or produced by Varsity Spirit, LLC or any of its subsidiaries or brands (including but not limited to JAMfest, NCA, UCA, USA, Spirit Unlimited, Epic Brands, Spirit Celebrations, and American Championships) at which 200 or more All Star teams participated. For each such event, state: a. The name and location of the event; b. The year(s) in which 200 or more teams participated; c. The number of All Star teams that participated in each such year; and d. Whether the event awarded bids to any end-of-season event(s), and if so, which event(s).

ECF No. 158-1 at 4. Plaintiffs argue this information is relevant to rebutting Defendant's arguments about market power and to cross-examining Defendant's designated expert. *See* ECF No. 172 at 4. For their part, Defendant claims this information is not relevant and that it could take them "a dozen or more hours" to gather the necessary data. Defendant then

5

argues that it would be easier to simply provide the "total number of events" rather than the "granular" details Plaintiffs have requested. ECF No. 168 at 18–19. In their Reply, Plaintiffs offer a compromise, writing, "If Varsity prefers to identify every event it hosts and provide the number of teams at each event, then that would be acceptable . . . ." ECF No. 172 at 5.

The Court **GRANTS** Plaintiffs' Motion as to Interrogatory 3 and **ORDERS** Defendant to provide the requested information for all of its All Star competition events hosted or produced by Varsity Spirit, LLC or any of its subsidiaries or brands from January 1, 2018, to the present.

### III. Interrogatories 4–10

Interrogatories 4–10 seek the same information for several different events hosted by Defendant. *See* ECF No. 158-1 at 4–7. Each interrogatory is substantially identical and asks Defendant to provide information such as the revenue earned during, and the number of bids offered at, each of the events. For example, Interrogatory 4 reads:

> For the One Up Grand Nationals event held in Nashville, Tennessee, provide the revenue of the event, the cost of the event, the profit of the event, the event's venue, the event's capacity (i.e., the number of teams that could have been accommodated at the event, stating any assumptions regarding such capacity), the divisions offered at the event (including by age range, level, and type of cheerleading/dance, i.e., All Star, Rec, Prep, etc.), the bids offered at the event (by type, i.e., fully paid, partially paid, at large, and by identifying the event to which the bids pertained), the bids awarded at the event (by type, i.e., fully paid, partially paid, at large, and by identifying the event to which the bids pertained), the teams that attended the events(name and level), the registration fees for the event, the spectator fees for the event, any revenue You received from hotel, lodging or travel related to the event (with any associated costs), any revenue received from Your merchandise sales at the event (with any associated costs), and the event's date or dates. If precise financial figures are not readily available without undue burden, You may provide reasonable estimates based on Your ordinary business records, identifying any figures that are estimated.

ECF No. 158-1 at 4. Plaintiffs argue that these interrogatories are relevant because the information sought in them is "direct evidence of market power." ECF No. 172 at 5. Defendant

resists, claiming that it could take them up to "sixty to one hundred hours to assemble the requested information" from their records. ECF No. 168 at 17.

As the Court has already noted, the threshold for relevance during discovery is low—much lower than at trial. *See, e.g., Merrill*, 227 F.R.D. at 470 ("Relevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party. Unless it is clear that the information sought can have no possible bearing on the claim or defense of a party, the request for discovery should be allowed.") (quoting *Sheldon v. Vermonty*, 204 F.R.D. 679, 689 (D. Kan. 2001)). And relative to Defendant's total operations, Plaintiffs are not asking Defendant to produce much here. Rather, these interrogatories cover eight events that took place annually over an eight-year span, making for sixty-four events in total. *See* ECF No. 168 at 16–17. Defendant concedes that this is but a "small group" of its "hundreds of events." *See id.* at 16. Accordingly, the Court **GRANTS** Plaintiffs' Motion as to Interrogatories 4–10.

### IV. Interrogatory 12

Interrogatory 12 inquires into Defendant's internal policies. It reads:

Describe in detail Your policies and practices for determining: a. Which event producers may award bids to the Summit events (including the Summit, the D2 Summit, the Dance Summit, and the Youth Summit) ; b. How many bids each event producer may award to each event; c. The geographic territories in which event producers may operate; d. The dates on which event producers may hold competitions.

ECF No. 158-1 at 7. In their Motion, Plaintiffs stated that they included this interrogatory because they wanted Defendant to provide a "formal," verified response to their interrogatory "rather than an email from counsel." ECF No. 172. But this is not what the email exchange between the parties reveals. *See* ECF No. 168-4 at 2–4. Those emails show, in short, that Plaintiffs asked Defendant, "For interrogatory 12, if Varsity can confirm that its

7

policy/practice was for only Varsity events to award bids to the Summits before 2023, then that should resolve this interrogatory." *Id.* at 4. Defendant responded the same day, "As to #12, the practice for non-Varsity events in the United States was as you state." *Id.* at 3. As far as the Court can tell, Defendant's response appears to be precisely what Plaintiffs asked for. But for reasons unclear to the Court, Plaintiffs nonetheless included Interrogatory 12 in their Motion.

Then, on August 21, Plaintiffs filed a Notice to the Court regarding their pending Motion. This Notice advised the Court that the parties had "resolve[d] the dispute . . . as to Interrogatory 12." ECF No. 185 at 1. Accordingly, there is no need for the Court to issue a ruling as to this interrogatory, and the Court **DENIES** as moot Plaintiff's Motion as to Interrogatory 12.

### V. Interrogatory 15

The final dispute Plaintiff has asked the Court to resolve concerns Interrogatory 15, which reads:

> For each year from 2018 to present, state: a. Your total revenue from producing All Star competitions; b. The number of All Star competitions You produced; c. The total number of All Star teams that participated in Your competitions; d. Your estimated market share in the All Star Competition Market; e. The basis for any market share calculation.

ECF No. 158-1 at 7. Plaintiffs want this information because it is "tied to Varsity's dominance" and could show how Varsity maintains "market power through vertical integration." ECF No. 172. Defendant resisted providing it because it would be difficult to "apportion the hotel, spectator and merchandise revenue that Varsity realized" through these competitions. ECF No. 168 at 20. Defendant also conclusorily, and wrongly, asserts that Plaintiffs "provide literally no reason why they need this," even though Plaintiffs' Motion and Reply both provide plausible reasons to seek this information.

The Court finds that this information meets the low threshold for relevance at this stage and therefore **GRANTS** Plaintiffs' Motion as to Interrogatory 15.

**VI. Sanctions**

In its Response, Defendant writes that this Court would be "well-justified in sanctioning Plaintiffs for issuing overbroad interrogatories," presumably referring to Interrogatory 1. ECF No. 168 at 21. But Defendant cites no law on this point and does not even attempt to argue why sanctions are appropriate in this particular case, relying instead on conclusory statements about Plaintiffs' alleged misconduct in discovery. For their part, Plaintiffs entirely neglected to address the sanctions issue in their Reply brief.

The Court declines to discuss the sanctions issue because neither party attempted to brief it. The Court further admonishes the parties to resolve their discovery disputes without Court involvement, as required by both Rule 37 and the Scheduling Order governing this case. *See* FED. R. CIV. P. 37(a)(1) ("The motion [to compel disclosure] must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."); ECF No. 163 at 5 ("The Court expects the parties to work in good faith to resolve discovery disputes despite the numerous discovery disputes that have burdened this case."). The curt and uncivil email exchanges that precipitated this Motion are not enough to satisfy this requirement. *See Seastrunk v. Entegris, Inc.*, No. 3:16-CV-2795, 2017 WL 6406627, at *8 (N.D. Tex. Dec. 15, 2017) ("When a motion to compel addresses a number of matters, a good faith effort to confer typically requires that the parties discuss each matter in good faith to comply with conference requirements. When it may require several hours of court time to resolve the numerous issues raised, it seems logical that the parties will have spent an equal or greater amount of time attempting to resolve the issues without judicial involvement."). The parties are on notice that failure to satisfactorily confer before filing future discovery

motions could expose both parties to *sua sponte* sanctions by the Court. *See* FED. R. CIV. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.").

**CONCLUSION**

The Motion is **GRANTED in part** and **DENIED in part**. The Court **ORDERS** Defendant Varsity Spirit to supplement its responses to **Interrogatories 3, 4, 5, 6, 7, 8, 9, 10, and 15 within fourteen days of the date of this Order**, so as to fully answer these interrogatories in compliance with Rule 33's requirements.

**SO ORDERED.**

August 22, 2025

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE